IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LINDA PEARL WILSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-879-L** |
| | § | |
| **DALLAS COUNTY; DALLAS** | § | |
| **COUNTY COMMISSIONERS** | § | |
| **COURT; JAIME CORTES, in his** | § | |
| **individual and official capacities; and** | § | |
| **HOWARD EUGENE WATSON, in his** | § | |
| **individual and official capacities,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Dallas County and Jaime Cortes' Motion for Summary

Judgment, filed October 5, 2013. After careful consideration of the motion, briefs of the parties,

reply, supplemental briefs, record,[1] and applicable law, the court **grants** Defendants Dallas County

and Jaime Cortes' Motion for Summary Judgment.

## I. Procedural Background

Linda Pearl Wilson ("Wilson" or "Plaintiff") filed this action on April 27, 2011, against

Dallas County; Dallas County Commissioners Court; Jaime Cortes ("Cortes") in his individual

and official capacities; and Howard Eugene Watson ("Watson") in his individual and official

capacities (collectively, "Defendants"). Wilson brought this action pursuant to 42 U.S.C. § 1983,

---

[1] Plaintiff Linda Pearl Wilson ("Wilson") submitted a significant amount of evidence that describes events that occurred after she was sexually assaulted by Howard Eugene Watson ("Watson") on May 1, 2009. The court did not consider this evidence, as it was not relevant to which policies or procedures were or were not in effect at the time Wilson was assaulted by Watson.

**Memorandum Opinion and Order – Page 1**

alleging that Defendants violated her civil and constitutional rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  She also asserts state law claims of sexual assault and official oppression against Watson.

The County and Cortes contend that no genuine dispute of material fact exists to support liability against them for the federal claims asserted by Wilson.  Defendants Dallas County and Cortes contend that the evidence does not establish that Wilson suffered a constitutional deprivation that was caused by a policy or custom of the County, or by an official with policymaking authority, and that no person acted with deliberate indifference.  Cortes contends that the summary judgment evidence does not establish that he should be held liable on the basis of supervisory liability; and he also contends that he is entitled to qualified immunity because he did not violate clearly established federal law of which a reasonable public official would have known.

Wilson counters that the summary judgment evidence raises a genuine dispute of material fact as to whether Dallas County and Cortes are liable to her for the injuries and damages she suffered because of what Watson did to her.  She contends that the policies and procedures for hiring deputy constables in Dallas County that led to the decision to hire Watson were so lacking "as to constitute deliberate indifference and that [Dallas County and Cortes's] failure to have in place adequate policies for the evaluation of applicants such as Watson resulted in [his] [conduct] against [Wilson] that were or should have been plainly obvious to [these] Defendants.  Pl.'s Resp. to Defs.' Mot. for Summ. J. 2.  Wilson urges the court to deny the motion for summary judgment.

## II.     The Substantive Allegations of Plaintiff's First Amended Original Complaint

Rather than attempt to summarize the allegations regarding her claims against Defendants, the court will cite to relevant portions of Plaintiff's First Amended Original Complaint

**Memorandum Opinion and Order – Page 2**

("Complaint"), which is the operative pleading in this action.  As the Complaint groups the allegations as to each defendant, the court, for clarity and consistency, does likewise.

### A.   Watson

With respect to Watson and the factual background for her case, Wilson makes the following allegations:

8.      On or about April 30, 2009, Plaintiff, Linda Pearl Wilson, with her six (6) year[-]old daughter, went to the Dallas County Government Center Sub-Courthouse located at 410 S. Beckley Avenue, Dallas, Texas 75203 to transact some civil business in the clerk's office of the Justice of the Peace for that precinct.

9.      Prior to leaving the clerk's office, a deputy constable approached Plaintiff and advised her that there were three (3) outstanding warrants for her arrest stemming from bad check charges. Plaintiff was asked to go with the deputy to the office of Precinct 5 Constable Jaime Cortes[,] which she did.

10.     Upon arrival in the constable[']s office, Plaintiff was directed to a deputy who told her that she had to either pay fines due on the cases for which there were warrants or go to jail for ten (10) days.  She was then directed to move to the nearby desk of deputy constable Howard Watson.  Defendant Watson had a discussion with the Plaintiff directed at determining how she could pay the fines and avoid jail. In the conversation, Defendant Watson asked Plaintiff several inappropriate questions concerning her sexual relationships.  These inappropriate questions of a sexual nature were asked within earshot of her minor daughter.

11.     When Plaintiff objected to this discussion, Watson gave her a business card and told her to call him the following morning to further discuss how she would be able to satisfy the fines due and avoid incarceration.

12.     The next morning, on or about May 1, 2009, Plaintiff called Defendant Watson and advised him that she did not have the funds to pay the fines.  Watson called Plaintiff back and asked if he could come over to her residence and Plaintiff, feeling she had no choice, agreed.

13.     Shortly, Watson arrived dressed in full uniform and driving a Dallas County Constable squad car. He came to Plaintiff[']s door[,] and she allowed him to enter her home.  He told Plaintiff that he had the warrants for her arrest in the trunk of his car.  Plaintiff felt that she was going to be arrested if she did not comply with any requests that Defendant Watson made.

14.     Defendant made several inquiries to the Plaintiff as to the whereabouts of her minor daughter.  Plaintiff told Defendant Watson that her daughter was in day camp.

15.     Defendant Watson then asked Plaintiff if he could see her private parts and reminded the Plaintiff that he had the warrants for her arrest in the trunk of his car.

16.     Defendant Watson told Plaintiff to undress and she complied. Watson performed oral sex on Plaintiff.

17.     Defendant Watson ejaculated in his hand and cleaned himself with a near-by tissue.  Defendant Watson then placed the tissue in his pocket and left the premises of the Plaintiff's home.

18.     Defendant Watson during the course of the assault upon the Plaintiff dropped his wallet.  The Plaintiff went outside her house and stopped Defendant Watson to return the dropped wallet.

19.     Defendant Watson reminded the Plaintiff that the warrants were safe in the trunk of his car and that he would "keep them off her."

20.     Plaintiff disrobed and allowed Watson to perform a sex act on her because she had no money and was made to believe that this was the only way she could avoid being taken to jail on the outstanding warrants and separated from her minor child.

21.     The acts of Defendant Watson violated Plaintiff[']s constitutional rights under 42 U.S. 1983 and the 4th, 8th and 14th Amendments to the United States Constitution for which she now sues.

22.     The injuries suffered by the Plaintiff were proximately caused by the conduct of the Defendant Watson referenced above and were significant and severe. Specifically, Plaintiff suffered and continues to suffer the following damages:

     a.     Sexual assault[;]

     b.     Physical pain and suffering in the past, present and future; and

     c.     Mental anguish in the past, present and future.

Pl.'s First Am. Compl. ¶¶ 8-22.

**Memorandum Opinion and Order – Page 4**

**B.      Dallas County**

With respect to Dallas County and the Commissioners Court, Wilson contends they are

liable because a policy or custom attributable to them was the cause of the alleged constitutional

deprivation that she suffered.  In this regard, she alleges the following:

23.     The Dallas County Commissioners Court is the governing body of Defendant Dallas County.  At all times relevant to this suit, the Dallas County Commissioners Court was the final policy maker for the hiring of [d]eputy [c]onstables recommended by the elected and/or appointed Constables of the various precincts in Dallas County.

24.     The Dallas County Commissioners Court/Dallas County in accordance with tradition, custom, and Texas statutes had the final decision making authority on the hiring of deputy constables and to make county policy for such hires.

25.     The Dallas County Commissioners Court/Dallas County at the time of the hiring of Defendant Watson did not have in effect the qualifications and background check requirements as mandated by state statute. State statu[t]e required Defendants Dallas County Commissioners Court/Dallas County to qualify deputy constables in the same manner as that of deputy sheriffs.

26.     The Defendants Dallas County/Dallas County Commissioners Court did not have the same criminal background check and qualifications for deputy constables as that of deputy sheriffs.  Dallas County deputy sheriffs are required to take a written test, physical assessment test, psychological assessment, and a polygraph test before hiring. These were not required before hiring as a deputy constable.

27.     In 2007, the Dallas County Commissioners Court appointed Defendant Jaime Cortes to serve as constable for Precinct 5 of Dallas County following the resignation of the previous constable.  In 2008 Cortes was elected to serve out the balance of that unexpired term.  As the appointed and then elected constable for Precinct 5, Defendant Cortes was the individual who executed the policies of the Dallas County Commissioners Court in the hiring and appointment of deputy constables within his precinct.

28.      Subsequent to his appointment as constable for [P]recinct 5 of Dallas County, Cortes hired Defendant, Howard Eugene Watson, to serve as a deputy constable in Cortes' office.  At the time of Watson's hire, he was a sixty[-]four (64) year[-]old individual who had little, if any, actual experience as a law enforcement officer.

29.     Watson had [ ] a substantial civil judgment filed against him in California in excess of thirty thousand dollars.

30.     Watson had been sought by California for failure to pay child support as ordered.  The case was dismissed when California authorities could not find him.

31.     On or about November 1990[,] Ms. Dessory Channels is placed in [ ] Defendant Watson's home as a foster child. She is thirteen years of age at the time of the placement.  Shortly after the placement, Defendant Watson begins to have sexual relations with the minor child placed in his care.

32.     On or about April 15, 1991, Defendant Watson was accused in a criminal complaint of shooting at an off-duty Los Angeles police officer who identifie[d] him as the suspect in a photo lineup.

33.     On or about June of 1996, Ms. Dessory Channels gave birth to a son, alleging Defendant Watson as the father.

34.     On or about May of 1997, Ms. Dessory Channels gave birth to twin daughters, alleging Defendant Watson is the father.

35.     On or about June 7, 1998, Defendant Watson was accused in a criminal complaint of domestic abuse and threats against Ms. Dessory Channels.  She was described in court documents as his former girlfriend.

36.     On or about July 17, 1998, an arrest warrant for Defendant Watson in [a] domestic abuse case was issued stemming from charges of abuse against Ms. Dessory Channels.

37.     On or about September 8, 2003, an arrest warrant against Defendant Watson in [the] domestic abuse case was dismissed.

38.     On or about February 8, 2007, Los Angeles County Child Support Services Department filed a child support case against Defendant Watson on behalf of Dessory Channels.

39      On or about December 3, 2008, the child support case against Watson was dismissed for "lack of prosecution."

40.     The hiring policies of Dallas County and the Dallas County Commissioners Court were so lax that a person seeking to be hired as a deputy constable did not have to submit to a written test or a polygraph examination, which could have easily revealed these prior scrapes with the law. All the information referenced above in paragraphs 28-39 was and is public information and was readily available to Cortes and Dallas County[,] and the failure of Defendants Cortes and Dallas County to

uncover or consider that information was a deliberate or, at least, a reckless omission in the evaluation of Defendant Watson's qualifications to serve as a law enforcement office in Dallas County.

41.      Further, it was the custom and practice in Dallas County for the Commissioners Court, although it has the authority to make final hiring decisions, to rubber stamp the hiring recommendations of its elected officials such as Constable Cortes without any investigation into the background of the potential employee.

42.      The lax policies and guidelines and the insufficient qualifications required for deputy constables established by Dallas County and its Commissioners Court were directly responsible for the hiring of Defendant Watson as a deputy constable.

43.      Even a minimal or cursory background investigation into Defendant Watson's past would have demonstrated clearly that he was a danger to the public, the type of person who would be likely to commit the types of acts which he committed against Plaintiff as alleged in this case and certainly not qualified to serve the public as a law enforcement officer. The failure of Defendant Dallas County to have such policies in place violated Plaintiffs civil rights under 42 U.S.C §§1983 and 1988 and the 4th, 8th and 14th amendments of the United States Constitution and proximately caused the injuries and damages suffered by Plaintiff in this case for which she now sues.

Pl.'s First Am. Compl. ¶¶ 23-43 (footnotes omitted).

### C.      Cortes

With respect to Defendant Cortes, Wilson makes the following allegations:

45.      Defendant Cortes was the elected constable of Precinct 5 of Dallas County at the time of the assault upon the Plaintiff. He originally received the position of constable in 2007 by appointment through the Dallas County Commissioners Court. He was appointed as Constable to fill the unexpired term of the previous constable, who had resigned the office. Defendant Cortes was elected to the position during the election[ ] of 2008.

46.      Defendant Cortes appointed Defendant Watson to the position of deputy constable even though Watson did not meet the requisite time of one year's experience as a law enforcement officer to qualify for the position.

47.      As the elected constable of precinct 5, it was the responsibility of Defendant Cortes to appoint his deputy constables in accordance with state statutes.

48.     Defendant Cortes, as the constable of Precinct 5, was responsible for the preemployment background check of Defendant Watson.

49.     Defendant Cortes, as the constable of Precinct 5, was responsible for the assignment of Defendant Watson to issue warrants and effectuate the arrests of those citizens who had outstanding warrants.

50.     In the year 2009, Defendant Cortes promoted Defendant Watson to the rank of lieutenant even though he had significantly less training and experience than other deputy constables and his promotion was completely unwarranted.

51.     At the time of his appointment and eventual hiring as a deputy constable, Defendant Watson had many infractions and allegations within the state of California [that] should have signaled to Defendant Cortes that Watson was not qualified to a Dallas County deputy constable.

52.     A minimal or cursory background investigation into Defendant Watson's past would have demonstrated clearly that he was the type of person who would be likely to commit the types of acts which he committed against Plaintiff as alleged in this case. The failure of Defendant Cortes to perform a proper criminal background check on Watson or to require his compliance with minimal requirements for employment as a law enforcement officer was a deliberate omission or, at the least, a reckless omission and violated Plaintiff's civil rights under 42 U.S.C §1983 and the 4th, 8th and 14th Amendments to the United States Constitution and proximately caused the injuries and damages suffered by Plaintiff in this case for which she now sues.

Pl.'s First Am. Compl. ¶¶ 45-52 (footnote omitted).

## III.     Official Capacity Lawsuits and Jural Existence

Before addressing the merits of the motion for summary judgment, the court addresses two pertinent issues in this action: official capacity lawsuits and jural existence.  A lawsuit against an individual in his or her official capacity is treated as a lawsuit against the governmental entity of which the individual is an agent, employee, official, or representative. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted).  Accordingly, the claims against Cortes and Watson in their official capacities will be treated as claims against Dallas County.

Second, Plaintiff has included the Commissioners Court as a party to this litigation. Defendants state in conclusory fashion without any authority or explanation that the Commissioners Court has no jural existence separate and apart from Dallas County. While this is true, this cursory statement does not tell the whole story.

The Commissioners Court is the body that exercises "power and jurisdiction over all county business . . . ." Tex. Const. art. V, § 18(b). In other words, "[a] county operates through its Commissioners Court." *Bee County v. Roberts*, 437 S.W.2d 62, 63 (Tex. Civ. App.—Corpus Christi 1968, no writ) (citations omitted). Neither the Texas Constitution nor any state statute confers jural or legal existence on the Commissioners Court, and Wilson has produced no evidence that a Commissioners Court in Texas has jural existence; therefore, the Commissioners Court "does not have the capacity to sue or be sued." *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Dallas County is the entity that has jural existence, and a suit against the Commissioners Court is a nullity and can only proceed as one against Dallas County as the proper party. Accordingly, the court treats the suit against the Commissioners Court as one against Dallas County.

## IV.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see*

*also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## V.      Undisputed Facts

1.      At the time Watson was hired, Cortes was the Constable of Precinct No. 5, Dallas County, Texas.  Cortes hired Watson as a Deputy Constable I on July 23, 2007.

2.      At the time of Watson's hiring, a "Quick Search" was done based on the information provided to the County by Watson.  That "Quick Search" included a record search of, among other things, the Los Angeles, California Municipal Court, which reported no felonies or misdemeanors for Watson in the past seven years and the San Bernardino, California Superior Court, which reported no felonies or misdemeanors in the past seven years.

3.      No investigation of Watson's background was done through a recognized law enforcement agency.  The investigation was done by a third-party vendor.  Cortes did not conduct a background check on Watson or screen Watson's records.

4.      At the time of his hiring, Watson held a Peace Officer License from the Texas Commission on Law Enforcement Officer Standards and Education.  He had been licensed since February 21, 2006.

5.      All applicants for a Peace Officer License are subject to a search of the local, state and United States national records and fingerprint files to disclose any criminal record to establish eligibility for licensing.

6.      Plaintiff was sexually assaulted by Watson on or about May 1, 2009.

7.      On January 27, 2010, Watson, among other things, was formally charged with two counts of sexual assault of the Plaintiff.  He was placed on leave of absence pending a resolution of an investigation of the criminal charges against him.

8.      On April 5, 2010, Watson's employment with Dallas County as a Deputy Constable I was terminated.

9.      At the hearing held on March 13, 2014, counsel for Defendants acknowledged that Cortes was a policymaker with respect to hiring decisions, and the court accepts this concession as an undisputed fact.

**VI.     Analysis**

      **A.      County Liability**

            *1.      Standard*

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A governmental entity *cannot* be liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Id.*; *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).  Official policy is defined as:

> 1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.      A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *see also Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).  A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy.  *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).  A plaintiff must establish that the governmental entity through its deliberate conduct was "the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right.  *Bryan County*, 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official.  *Bennett*, 728 F.2d at 769.  The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action ordered . . . . The official must also be responsible for establishing final governmental policy respecting such activity before the [county] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and *cannot*

review the action or decision of the employee, agency, or board. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390).

The type and quantum of proof a plaintiff must offer to establish deliberate indifference vary, however, with the type of inaction alleged and with the identity of the wrongdoer. When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *See, e.g.*, *Pembaur*, 475 U.S. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). When the challenge relates to a custom of behavior among nonpolicymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (internal quotations and citations omitted). Isolated violations are not persistent, often repeated constant violations that constitute custom or policy. *Bennett*, 728 F.2d at 768 n.3. In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members

**Memorandum Opinion and Order – Page 14**

would necessarily have learned of the objectionable practice and acceded to its continuation." *Id.* at 768.

### 2. *Discussion*

The essence of Plaintiff's argument is that the County and Cortes failed to review, screen, or investigate Watson's background and fitness before he was appointed as a deputy constable, that the failure was a result of grossly deficient hiring practices by Dallas County and Cortes, that the failure of Dallas County and Cortes to perform the necessary background checks caused Watson to deprive Wilson of certain constitutional rights, that the failure amounted to deliberate indifference, and that the County and Cortes are therefore liable to Wilson for Watson's violation of her constitutional rights.  In other words, Wilson contends that had an adequate investigation and screening of Watson occurred before he was hired, Watson would not have been hired and she would not have suffered a constitutional violation at the hands of Watson.[2]

Dallas County counters that the summary judgment record does not establish Wilson's allegations regarding Watson's past; that the summary judgment record fails to establish that no background investigation was conducted of Watson or that only a cursory or minimal check was conducted.  Dallas County further contends that the record does not establish that an inadequate investigation was conducted regarding Watson's criminal background.   For the reasons that follow, the court agrees with Dallas County that there is no basis for liability against it based on the relevant and competent summary judgment evidence presented.

---

[2] As Cortes was sued in his official and individual capacities, the court, for liability purposes, treats Cortes and Dallas County as one in the same insofar as the action relates to conduct taken by Cortes in his official capacity as constable.

The test to impose section 1983 liability on a government entity in this instance is quite strict, and that test as set forth by the Supreme Court is as follows:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Bryan Cnty.*, 520 U.S. at 411. "[T]hat inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410-11 (emphasis in original). Liability must rest on a finding that the officer in question was "highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412 (emphasis in original). An applicant's background is irrelevant unless there is a "link between [the applicant's] actual background and the risk that, if hired, he would [commit the constitutional violation alleged in the pleadings]." *Id*. at 411. In other words, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that [the officer in question] was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412 (emphasis in original).

Wilson implies that no background check was conducted on Watson before he was hired in 2007. This is incorrect. Although undisputed facts reflect that the background check lacked the thoroughness and detail that one would expect when hiring a law enforcement officer, the record establishes that some degree of checks took place. The undisputed facts show that Watson was licensed by the State of Texas as a peace officer in 2006. The undisputed facts further establish that a "Quick Search" was done based on information provided by Watson, and that records from

California revealed no felonies or misdemeanors in the past seven years against Waston.  Based on rules of the Texas Commission on Law Enforcement Standards and Education, Watson and all other applicants were not eligible to be licensed as a peace officer without a search of local, state, and national records to check such applicant's criminal history.

The court next addresses whether additional screening would have led the County or Cortes to know or consider that the plainly obvious consequences of the decision to hire Watson would have resulted in the sexual assault of Plaintiff or some other person, that is, Watson's deprivation of Wilson's, or some other person's, substantive due process right to bodily integrity, which arises under the 14th Amendment to the United States Constitution.  *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (en banc).  In this regard, Wilson sets forth several incidents that she contends, had the County and Cortez conducted adequate checks, would have put them on notice that further inquiry should have been made regarding Watson's background and that Watson would have committed the sexual assault against Plaintiff or some other person.[3]

First, Wilson lists the arrest of Watson in 1991 for the felony offense of assault with a deadly weapon.  The record reflects that this charge was dismissed in June 1992, which was over 15 years before Watson was hired as a deputy constable.

Second, Wilson lists a case of domestic violence against Watson.  The record is unclear as to whether the case was filed in 1997 or 1998.  In any event, the charge was dismissed in September 2003, which was almost four years before Watson was hired as a deputy constable.

---

[3] Although Wilson contends that Defendants violated her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, the only viable claim is that asserted pursuant to the Fourteenth Amendment.  In any event, for the reasons stated by the court, claims purportedly brought under the other constitutional amendment are not viable.

**Memorandum Opinion and Order – Page 17**

Third, Wilson lists a child support case, filed in February 2009, that Watson had pending against him at the time he applied for employment as a deputy constable for Dallas County. Plaintiff also includes an affidavit of Dessory Channels, who states that Watson sexually abused her and another child under his care in the 1990s. This affidavit also states that Watson fathered three children with Channels. The child support case was filed as a result of twins being born on May 5, 1997.

At the hearing held regarding the summary judgment motion on March 13, 2014, counsel for Plaintiff acknowledged that the information regarding the child support matter would not have put the County or Cortes on notice that further inquiry should have been made into Watson's background. Wilson, however, does still contend that the domestic violence case and the aggravated assault case with a deadly weapon against a law enforcement officer put the County and Cortes on notice to make further inquiry into Watson before hiring him as a deputy constable.

As stated previously by the court, the charge involving the aggravated assault with a deadly weapon against a law enforcement officer was dismissed in 1992. The court rejects Plaintiff's argument that this information required the County or Cortes to make further inquiry or investigation into Watson's background.

This court, as well as all reasonably informed persons, knows that alleged assaults with deadly weapons against law enforcement officers are taken quite seriously by authorities, and such cases are not dismissed lightly. In other words, it can reasonably be inferred that Watson would have been prosecuted to the fullest extent of the law had he committed an assault against a law enforcement officer. That the case was dismissed strongly indicates that the evidence was insufficient to sustain the charge. In any event, the court simply cannot say that this information should have prompted the County or Cortes to further scrutinize Watson's background.

**Memorandum Opinion and Order – Page 18**

Further, Wilson sets forth evidence that the County and Cortes did not rely on a TCIC/NCIC (Texas Crime Information Center/National Crime Information Center) criminal background check for Watson's criminal history. The implication is that, had the County or Cortes done so, Watson would have not been hired and would not have committed the constitutional violation against Plaintiff. This argument is foreclosed by *Snyder*, in which the court noted:

> [A] county that failed to request a National Crime Information Center check for police applicants did *not* act with deliberate indifference toward the rights of its citizens—even though conducting a check would have disclosed that the applicant (who later shot the plaintiff) had a history of fifteen arrests for assault, armed robbery, and other misdeeds. We saluted the efficiency of an NCIC check but shied away from anointing it as a constitutional requirement.

142 F.3d at 796 (emphasis in original) (citing *Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988).

The court now turns to the domestic violence assault charge against Watson that was filed in 1997 or 1998 and subsequently dismissed in 2003. First, the record in this case reflects that this case was a misdemeanor case of assault involving domestic violence. The unproven allegation was subsequently dismissed. Further, nothing from a description of the charge indicates it is one that involved the alleged sexual abuse of a child or minor. Plaintiff now has produced an affidavit of the alleged victim in which she states that she was abused and raped by Watson; however, nothing in the record indicates, or even intimates, that at the time Watson was hired the County or Cortes knew that the charge was one that allegedly involved the sexual abuse and rape of a minor.

Examining all of these alleged deficiencies in the light most favorable to Wilson and assuming that the County or Cortes should have made further scrutiny or assessment of Watson's background, at most, the actions or inactions of the County and Cortes can be characterized as gross negligence. "Gross negligence" is not the same as "deliberate indifference." The terms "gross negligence" and "deliberate indifference" are sometimes confused and interchanged;

however, "deliberate indifference" is a stricter standard.  *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d at 453.  "Gross negligence" is a heightened degree of negligence, whereas "deliberate indifference" is a "lesser form of intent."  *Id.* at n.7 (citation omitted).  A showing of heightened negligence is insufficient to establish deliberate indifference.  *Bryan Cnty.*, 520 U.S. at 407.

"The deliberate indifference standard is a high one."  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).  Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bryan Cnty.*, 520 U.S. at 410.  This term is best defined and summarized as follows:

> To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety.  The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference.

*Whitely v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citations, internal quotation marks, and brackets omitted).

The court finds *Bryan County* illustrative and controlling.  In *Bryan County*, the sheriff (the hiring official) "did not inquire into the underlying conduct or the disposition of any of the misdemeanor charges reflected on the [officer's] record before hiring him."  520 U.S. at 411.  In this case, had Cortes reviewed Watson's record, he may have come to the conclusion that Watson would be unsuitable as a deputy constable; however, unless he "necessarily would have reached that decision" because the sexual assault of a citizen by Watson "would have been a plainly obvious consequence" of his decision to hire Watson, his failure to review Watson's record cannot constitute deliberate indifference.  *Id.* at 414.

That the policymaker had knowledge of an officer's background is not determinative.  Indifference to a prospective officer's record may be present; however, for liability to attach,

indifference to a plaintiff's *constitutional right* must be established. *Id.* at 414-15. In other words, whether Cortes failed to scrutinize Watson's record, partially scrutinized it, or fully scrutinized it, his decision to hire Watson could not have been deliberately indifferent unless in light of Watson's record his act of sexually assaulting Wilson or some other citizen would have been a plainly obvious consequence of Cortes's decision to hire Watson. *Id.* at 415. The evidence in this case does not meet this test, and thus Plaintiff has not raised a genuine dispute of material fact to show that Dallas County or Cortes's conduct rises to the level of deliberate indifference. Plaintiff's argument essentially rests on the mere probability that the failure to screen Watson adequately resulted in her constitutional injury. This is not the test. *See Bryan Cnty.*, 520 U.S. at 412. That the failure to screen makes the violation more likely on the part of the officer is insufficient to impose liability. The test for liability requires finding that Watson was *highly likely* to deprive Plaintiff, or some third party, of her right to bodily integrity by way of a sexual assault. While Plaintiff uses the correct buzzwords in asserting that deliberate indifference exists, evidence that it does is lacking. Plaintiff has not produced sufficient evidence to create a genuine dispute of material fact on this issue. In other words, Plaintiff has not established the requisite link between Watson's background and the risk that, if hired, he was highly likely to have committed a sexual assault against a citizen and deprived her of her right to bodily integrity. *Id.* As no genuine dispute of material fact exists, Dallas County and Cortes are entitled to judgment as a matter of law on Plaintiffs' substantive due process claim of deprivation of her right to bodily integrity.[4]

_____

[4] Wilson also contends that Watson's employment history and educational background were not verified, and that no polygraph was administered to Watson before he was hired. Assuming this to be true, the court cannot say that the failure to verify Watson's educational and employment history, as well as the failure to administer a polygraph, constitutes deliberate indifference on the part of Dallas County and Cortes, and would have led them to conclude that the plainly obvious consequence of the decision to hire

Wilson relies on the Affidavit of Emilio J. Perez, a former police chief with over thirty years of experience in law enforcement. The court presumes that Perez is Plaintiff's expert witness. Perez states what he believes the County and Cortes should have done and discovered before Watson was hired. He characterizes the incidents previously set forth in this opinion involving Watson as "red flags" and ultimately opines as follows:

> It is no surprise to me that, given the allegations of Watson's history of violence toward women and sexual assault of a foster child, that he would later be found to be engaging in sexual misconduct of the type alleged in Linda Wilson's petition in US District Court. Watson should never have been hired as a peace officer in any capacity.

Aff. of Perez 4. This affidavit does not create a genuine dispute of material fact as to deliberate indifference on the part of Dallas County or Cortes. The court interprets Perez's statement to mean that, because of Watson's background, the sexual assault of a female by Watson could occur and that, if it occurred, the incident would not surprise him. Even if the court interprets Perez's statement to mean that sexual conduct in which Watson ultimately engaged would probably occur, the statement does not establish deliberate indifference. This is so because mere probability that a constitutional violation will occur is insufficient to establish deliberate indifference; deliberate indifference exists only if the evidence shows Watson was "highly likely to inflict the *particular injury suffered by the plaintiff.*" *Bryan Cnty.*, 520 U.S. at 412.

In retrospect, Watson was an unsuitable hire as a deputy constable. Hindsight is always twenty-twenty; however, there is insufficient evidence to establish that Cortes was deliberately indifferent to Wilson's constitutional rights when he made the decision to hire Watson. The court's

---

Watson would be the deprivation of a third-party's federally protected right to bodily integrity, that is, the right to be free from sexual assault by a state actor.

ruling is not an endorsement of the actions or inactions of Dallas County or Cortes, and certainly the procedures and policies in effect at the time Wilson was assaulted by Watson are no cause for approbation. Plaintiff simply fails to meet the stringent test for deliberate indifference established by the Supreme Court. When a court "fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior*. *Bryan Cnty.*, 520 U.S. at 415. Premising liability on *respondeat superior* contravenes well-established Supreme Court authority. *See Monell*, 436 U.S. at 694.

### B.  Cortes's Liability

Wilson purports to sue Cortes in his individual and official capacities. The Complaint certainly alleges acts or nonaction taken by Cortes in his official capacity as a policymaker. The court, however, is uncertain of the theory on which Plaintiff relies to sue Cortes in his individual capacity. Personal liability against a state actor attaches only if he was personally involved in the conduct that "caused the deprivation of [a plaintiff's] constitutional rights or [if] [ ] a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (citations omitted). There is no evidence that Cortes personally participated in, condoned, encouraged, or sanctioned the sexual assault that Watson committed against Wilson. Thus, Cortes cannot be liable on this basis. The only other theory on which Plaintiff could seek to hold Cortes personally liable is supervisory liability, although she does not plead such theory.

To the extent that Plaintiff seeks to hold Cortes liable under a theory of supervisory liability for failure to train or supervise Watson, such theory fails. Under this theory, Plaintiff must establish that the conduct of Cortes deprived Wilson of a constitutional right. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In particular, Wilson must show

**Memorandum Opinion and Order – Page 23**

that Cortes failed to train or supervise Watson; that a causal connection exists between the violation of Wilson's constitutional rights and the failure to train or supervise; and that Cortes acted with deliberate indifference in failing to train or supervise Watson. *Id.* (citations omitted). The record is devoid of any evidence that Cortes was deliberately indifferent to the training or supervision of Watson. Accordingly, Cortes cannot be liable to Wilson on the basis of supervisory liability.

### C.      Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as personal or individual liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Cortes has pleaded this defense. As the court has held that no basis exists for liability against Cortes in his personal or individual capacity, no purpose is served by addressing Cortes's qualified immunity defense, and the court declines to do so.

### VII.    Conclusion

For the reasons herein stated, the court determines that no genuine dispute of material fact exists with respect to Plaintiff's claims against Defendants Dallas County and Jaime Cortes, and they are entitled to judgment as a matter of law on Plaintiff's constitutional claims. Accordingly, the court **grants** Defendants Dallas County and Jaime Cortes' Motion for Summary Judgment, and the court **dismisses with prejudice** Plaintiff's constitutional claims against Dallas County and Cortes.

The court brings several important matters to the parties' attention. First, the Complaint includes state law claims against all Defendants. Dallas County and Cortes did not move for

summary judgment on Plaintiff's state law negligence claim against them.   Second, the record indicates that Watson is in default; however, no request has been made to the clerk to enter a default, and no motion for default judgment against Watson has been filed by Plaintiff pursuant to Rule 55 of the Federal Rules of Civil Procedure.   Third, given the age of this case, the court plans to try the remaining claims as soon as possible, unless they are promptly resolved by the parties. The court informs the parties that it will be contacting them forthwith to hold a telephone conference regarding the remaining matters.

**It is so ordered** this 29th day of August, 2014.

Sam A. Lindsay
United States District Judge